State, ex rel. De Bolt, v. Kelly.

STATE, EX REL. NORA M. DEBOLT, APPELLANT, v. IDA M. KELLY, APPELLEE.

FILED DECEMBER 19, 1916. No. 19596.

1. Insurance: FRATERNAL SOCIETIES: ELECTION OF OFFICERS. The supreme authority of a fraternal, beneficiary society, which is by the constitution of the order made the "judge of election and qualification of its officers," may at the same meeting, and immediately after an election of an officer is declared, reconsider the election and take another ballot, if the first election is the result of fraud or mistake and irregularity, and generally it is for the voters themselves in such cases to determine the question of fraud or mistake.

2. ———: ———: ———. In such a case, if it appears that the question of fraud or mistake is raised in good faith and is determined by the voters themselves, the courts will not interfere and declare

that the supposed fraud or mistake was not of sufficient impor-
tance to justify the action of the voters.

3.  ———: ———: ———: RECORDS. If the regular record of the pro-
ceedings of such an order is not impeached in the pleadings, nor
directly attacked, without objection, in the evidence, the minutes
kept by the proper officer and duly certified will control.

4.  ———: ———: ———. One who is formally presented as a can-
didate upon the final ballot, and is voted for without protest on
her part, cannot afterwards object that such ballot was without
authority, and that she is entitled to the office by the former bal-
lot which was set aside by the action of the qualified voters.

APPEAL from the district court for Douglas county:
WILLIS G. SEARS, JUDGE. *Reversed, with directions.*

*John J. Sullivan* and *Arthur F. Mullen,* for appellant.

*Jefferis & Tunison, contra.*

SEDGWICK, J.

The Supreme Forest, Woodmen Circle, as defined by
its constitution, is "a secret, fraternal, beneficiary and
benevolent order." Its constitution provides that the
regular election of officers "shall take place in 1915 at
the biennial meeting of the Supreme Forest and every
four years thereafter." One of the officers to be elected
was "Supreme Banker," which office had been held by
this respondent for several years. The "Supreme Bank-
er" was paid a salary of $1,500 per annum. A ballot
was taken, and the respondent was declared elected.
Afterwards some question was raised as to the ballot,
and another ballot was taken and the relator declared
elected. The respondent refused to surrender the office,
and this action was brought. The respondent insists
that the first ballot was regular, and that the electors
had no power to disregard it and take another ballot.
The trial court found for the respondent and dismissed
the action, and the relator has appealed.

The constitution of the order contains this provision:
"It (the Supreme Forest) shall be the judge of election
and qualification of its officers and members and estab-

lish rules for their government." It also contains the provision: "No reconsideration of a ballot shall be had after the guardian has announced the result thereof." These two provisions might be considered as inconsistent, if it were not for the fact that the former is a general provision of the order, and the latter is a special provision in the rules of the order in regard to application for membership, and must, therefore, to avoid inconsistencies, be construed as applying to these matters only. The power of this Supreme Forest to reconsider the election of an officer in the same meeting at which the election was held is very much discussed in the briefs, and it appears to be generally held that, if the election is questioned for some irregularity or mistake in the procedure, and not for the purpose of enabling the electors to change their vote, such a body may reconsider the election, even without a special provision in its constitution making it the judge of the election of its officers. Some authorities have held that such an election cannot be reconsidered for the purpose of enabling the electors to change their votes and elect another person after a qualified person has been elected and accepted the office.

If such an election is the result of fraud or mistake, it may be reconsidered by a majority of those entitled to participate therein, and generally it must be for the voters themselves to determine the question of fraud or mistake. If it is unanimously conceded by those participating in the election that there has been such fraud or mistake as to require another ballot to determine the will of the voters and another ballot is immediately taken accordingly, it is not the duty of the courts to interfere and declare that the supposed fraud or mistake was not of sufficient importance to justify another ballot. If the person afterwards complaining participates in the second ballot without protest and apparently at the time acquiesces in the result, it ought to be conclusive that the fraud or mistake in the first ballot was

sufficient to justify the taking of another ballot, and that the result of the second ballot expressed the real will of the voters.

There is some evidence which by itself would tend to indicate unfair practice in the second ballot and arbitrary action on the part of the presiding officer, in which she was encouraged by some of the electors; but the correctness of the official records of the proceedings is not challenged in the pleadings, and there is no direct attempt in the evidence to amend or modify the official minutes of the proceedings. These minutes recite that two candidates for the office, the relator and the respondent, were nominated. A ballot was taken, and the tellers announced that 63 votes were cast, that the relator received 31 and the respondent received 32 votes. The presiding officer then announced: "Sovereign Kelly receiving the higher number of votes, you have elected your present banker, Ida M. Kelly, to serve as banker for the next four years." The respondent accepted the election, whereupon a delegate announced: "There were only 63 votes cast when there should have been 65." One of the delegates announced that they found a blank ballot, and the presiding officer declared: "If there is anything that concerns the ballots, they should call the attention of the convention to it, so if it is not a legal ballot another ballot may be taken." A delegate inquired whether anyone had a right not to vote, and the presiding officer then announced: "What is the pleasure of the convention? I think the roll should be called and see if there are 65 votes. I will ask that we commence with Sovereign Toomey and count." The record recites that "this count showed that there were 64 present who were entitled to vote." A delegate then announced that she believed that "Mrs. Kelly would wish the ballot correct," and moved that "we reconsider the ballot." The motion was seconded. The question was then raised whether the former ballot was valid, there being one blank ballot, and the presiding officer announ-

ced: "Every one must vote, unless excused by the convention." A delegate then asked, "Can you reconsider a ballot after it has been announced by the Supreme Guardian?" and the Supreme Guardian, as presiding officer, stated: "I would say that the chairman of the tellers did not report the blank until after it was announced. If there is anything wrong, the chairman of that committee should so announce it, so that this convention may say how the ballots were cast. But it was not announced until after I announced the election." The presiding officer then put the motion whether the former ballot should be reconsidered, to be determined by a rising vote. The vote was taken, and it was announced that there were 36 in favor of the ballot being reconsidered, and the motion to reconsider was declared carried. The presiding officer announced: "Now you will prepare your ballot for Supreme Banker. The candidates are Ida M. Kelly and Nora DeBolt, and all must vote." A delegate requested that the candidates be introduced, "so that every one might know which ones they were." That was then done by the presiding officer, who introduced the relator and the respondent, respectively, as the two candidates. The vote was then taken, and the tellers announced that there were 64 votes cast, and that the relator received 33 votes and the respondent received 31 votes, and the presiding officer announced: "You have by your votes elected sovereign Nora DeBolt for Supreme Banker." The respondent then announced: "I want to congratulate Sovereign DeBolt, and assure her that, if she is banker, she will have my hearty co-operation in her work." The relator then formally accepted the office.

It is then established that, immediately after the result of the first ballot was announced, one of the electors raised a question as to the regularity of the election, and a motion was made to take another ballot. This motion was declared adopted and another ballot ordered. It was then declared that there were two candidates,

State, ex rel. De Bolt, v. Kelly.

and this respondent was formally introduced as one of the two candidates to be voted for. By so offering herself as a candidate she again submitted her claims to the voters. She must have done this voluntarily, since there is nothing to the contrary in the record of the election, nor in any evidence offered at the trial. She could not thus avail herself of the chance of a favorable vote, and afterwards repudiate the result. It is not denied that the votes were correctly counted, and that the relator received a majority and was duly declared elected.

The judgment of the district court is reversed and the cause remanded, with instructions to enter a judgment for relator as prayed in the information.

REVERSED.

LETTON, J., not sitting.

FAWCETT, J., dissents.

HAMER, J., dissenting.

This is the case where they had two ballots. On the first ballot Kelly was elected; on the second ballot De-Bolt was elected. I do not like this system of double ballots. I am not satisfied that there was any legal right to take the second ballot. It may have been a scheme concocted in the interest of DeBolt. I have seen irregularities in conventions where that sort of thing seemed to be done, and I do not like to be compelled to adopt it in an election in a fraternal insurance society. The voting of one blank ballot ought not to be enough to set aside an election. If not, Kelly has been elected, and she should be allowed to hold the office.